IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-378-FL

| | |
|---|---|
| BILLY RAY COVINGTON, JR. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon the parties' Motions for Judgment on the Pleadings. (DE's-26 & 28). No responses have been filed, and the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-26) be GRANTED, and that Defendant's Motion for Judgment on the Pleadings (DE-28) be DENIED. Specifically, it is RECOMMENDED that Defendant's final decision be vacated and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

**Statement of the Case**

Plaintiff applied for disability insurance benefits and supplemental security income on March 29, 2007, alleging disability beginning February 28, 2002. (Tr. 23). His claim was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge ("ALJ") who determined that Plaintiff was not disabled in a decision dated April 30, 2010.

*Id.* at 23-30. The Social Security Administration's Office of Disability Adjudication and Review denied Plaintiff's request for review on April 26, 2012. *Id.* at 1. Therefore, the ALJ's April 30, 2010 determination is Defendant's final decision. Plaintiff filed the instant action on June 27, 2012. (DE-7).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether Defendant has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See*, Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-440 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983). Without an analysis of all evidence and a sufficient explanation of the weight given to obviously probative exhibits, it is not possible to determine if the ALJ's decision is supported by substantial evidence. Arnold v. Secretary of Health, Ed. and Welfare, 567 F.2d 258, 259 (4th Cir. 1977). Remand is appropriate where an ALJ fails to discuss relevant evidence that weighs against his decision. Ivey v. Barnhart, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005)(*Citing*, Murphy v. Bowen, 810 F.2d 433, 438 (4th Cir. 1987)).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. ' 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. ' 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. ' 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. ' 404.1520(e); 20 C.F.R. ' 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. ' 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 28, 2002. (Tr. 25). At step two, the ALJ found that Plaintiff had the following severe impairments: 1) history of drug and alcohol abuse; 2) mild mental retardation; 3) arthritis; and 4) low back pain. *Id*. However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 25-26. Next, the ALJ determined that Plaintiff had the residual functional capacity to perform unskilled medium work. *Id*. at 26.

The ALJ then determined that Plaintiff had no past relevant work. *Id*. at 29. However, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. *Id*. Based on these findings, the ALJ determined that Plaintiff had not been under a disability from February 28, 2002 through April 30, 2010. *Id*.

Plaintiff argues that the ALJ failed to consider Listing 12.05C. Listing 12.05 states in relevant part:

> 12.05 Mental Retardation and Autism: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22) . . . The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .
>
> . . . C. A valid verbal, performance, or full scale IQ of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitations of function . . .
>
> 20 C.F.R. pt. 404, Subpart P, App. 1, § 12.05.

The Fourth Circuit has explained this Listing in the following manner:

> Listing 12.05 requires a showing of "deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22" ("Prong 1"). Listing 12.05 also requires the satisfaction of one of four additional requirements identified as Requirements A–D . . . Requirement C . . . requires "[a] valid verbal, performance, or full scale IQ of 60 through 70" ("Prong 2"), as well as "a physical or other mental impairment imposing an additional and significant work-related limitation of function" ("Prong 3").
>
> Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012).

Adaptive functioning deficits "can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." Jackson v. Astrue, 2012 WL 580239, * 3 (4th Cir. 2012) (*Citing* Atkins v. Virginia, 536 U.S. 304, 309 n. 3 (2002)).

Notably, the ALJ does not specifically refer to Listing 12.05 in his decision. Because the record arguably supports a finding that Plaintiff meets Listing 12.05, and the ALJ failed to adequately explain his findings with regard to that Listing, remand is required. *See*, McNeill v. Astrue, 2013 WL 865621, * 4 (E.D.N.C 2013)(Remanding because "the ALJ failed to adequately explain his ruling on Listing 12.05C"), *Report and Recommendation Adopted by*, 2013 WL 866070. *See also*, Strong v. Astrue, 2011 WL 2938084, * 9 (D.S.C. 2011)("The ALJ's failure to expressly consider and discuss his findings regarding whether Plaintiff satisfied Listing 12.05 would be sufficient reason to remand to the ALJ to properly consider the issue . . . [t]he decision fails to identify the listing, to explain the standard to be applied, and to compare Plaintiff's symptoms to the requirements of Listing 12.05").

For example, Plaintiff's school performance was poor. Plaintiff did not finish high school, and left with a very low grade point average. (Tr. 164, 259). He also repeatedly failed the North Carolina math and writing standardized tests. *Id*. at 165. During CAT testing in 1991

5

Plaintiff's scores ranged from the 2nd to 5th percentile nationally. *Id*. at 166.

Plaintiff underwent psychological testing on August 27, 1993. (Tr. 207). Plaintiff was 15 years old at the time of testing. *Id*. His previous IQ scores ranged from 59-78. *Id*. During this evaluation, Plaintiff demonstrated a: 1) verbal IQ of 64; 2) a performance IQ score of 70; and 3) a full scale IQ score of 64. *Id*. at 208. He was assessed as functioning in the "[m]entally [d]eficient range." *Id*. The examiner stated that the scores were 90% likely to reflect Plaintiff's true intellectual ability. *Id*. Plaintiff's reading level was fourth grade and his writing level was third grade. *Id*. at 209. Ultimately, it was determined that Plaintiff was "obviously a child who would benefit from assistance in the academic environment but identifying him as mentally handicapped may be inappropriate." *Id*.

Plaintiff underwent additional IQ testing on August 28, 2007. *Id*. at 270. He demonstrated: 1) a full scale IQ of 48; 2) verbal IQ score of 52; and 3) a performance IQ score of 53. *Id*. at 271. The results of the evaluation were deemed a "slight underestimate" of Plaintiff's abilities. *Id*. Nonetheless, the examiner still ultimately diagnosed Plaintiff with mild mental retardation. *Id*. at 272. He was further described as "functioning within the extremely low range of intelligence." *Id*. at 272. It was also determined that Plaintiff would not be capable of managing his funds in his best interest if he were awarded benefits. *Id*.

On April 28, 2008, Plaintiff's IQ was tested again. He demonstrated a: 1) verbal IQ of 55; 2) performance IQ of 57; and 3) a full scale IQ of 52. *Id*. at 307. Plaintiff made an appropriate effort throughout the evaluation. *Id*. It was opined that Plaintiff met the criteria for a diagnosis of mental retardation. *Id*.

Plaintiff displayed "deficits in learning, receptive learning, receptive and expressive language, capacity for independent living and economic self-sufficiency" on May 9, 2008. *Id*. at

306.

As noted above, the ALJ did not specifically mention Listing 12.05 in his analysis despite the record containing sufficient evidence to merit an analysis of that Listing. With regard to prong one, Plaintiff demonstrated deficits in academic skills. *Id*. at 164-166, 208-212. He also displayed adaptive functioning deficits on May 9, 2008. *Id*. at 306. With regard to prong two, Plaintiff has IQ scores within the required range. Finally, prong three is satisfied because the ALJ determined that Plaintiff also has other severe impairments. *See*, Watson v. Astrue, 2013 WL 136425, * 8 (D. Md. 2013)("the ALJ's conclusion that Plaintiff has other severe impairments" satisfies Listing 12.05). Although the ALJ did not discuss listing 12.05, he did make the following findings:

> In terms of the claimant's alleged mental impairment of mild mental retardation, the undersigned finds that allegation slightly credible. The claimant has not generally received the type of medical treatment one would expect for a person disabled by mild mental retardation. The claimant has not sought any treatment from mental health professionals as demonstrated by the record reflecting no actual treatment since the alleged onset date. There is no evidence of the use of any prescribed medicine designed to treat psychiatric or mental symptoms. Although the claimant achieved IQ scores that would result him meeting the listing for mental retardation, the claimant's responses during those psychological evaluations resulted in an invalid profile, raising the possibility that the claimant was not putting forth maximal effort or was not fully cooperating. Therefore, the undersigned finds that the claimant is not disabled due to mental impairments . . .
>
> . . . Dr. Burgess provided a diagnosis of mild mental retardation but opined that the scores were invalid due to lack of effort on part of the claimant (Exhibit 7F) . . .
>
> (Tr. 27).

In summary, the ALJ reached his conclusions by rejecting Plaintiff's IQ scores. *Id*. "[A]n ALJ has the discretion to assess the validity of an IQ test result and is not required to

7

accept it even if it is the only such result in the record." Hancock, 667 F.3d at 474. However, an ALJ's assessment of an IQ score must be supported by substantial evidence. Watson, 2013 WL 136425, * 3-4.

Here, the ALJ speculates that Plaintiff's IQ scores are invalid because he was not "putting forth maximal effort or was not fully cooperating." Id. at 27. However, this speculation contradicts the record. On the contrary, two examiners stated that Plaintiff's IQ scores were an accurate representation of his abilities. Id. at 298, 307. The third, Dr. E.J. Burgess did question whether Plaintiff was "putting forth his best effort." Id. at 271. It is not clear that Dr. Burgess found the scores to be "invalid", however. Dr. Burgess stated that these scores were only a "slight underestimate" of Plaintiff's ability. Id. Ultimately, he still diagnosed Plaintiff with mild mental retardation despite Plaintiff's possible lack of effort. Id. at 272. Thus, the ALJ's assertion that all of Plaintiff's IQ scores are invalidated by Dr. Burgess' statement is not supported by substantial evidence. "The ALJ cannot rely on speculative inferences drawn from the record to reject an IQ score which has not been called into question by any psychologist or other expert, and which is not inconsistent with Plaintiff's level of adaptive functioning." Watson, 2013 WL 136425, * 5 (quotation omitted).

In short, the undersigned recommends that this matter be remanded. On remand, an ALJ should specifically discuss Listing 12.05 and the validity of each battery of IQ testing Plaintiff has undergone.

8

Case 5:12-cv-00378-FL   Document 30   Filed 06/20/13   Page 8 of 9

**Conclusion**

For the reasons discussed above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-21) be GRANTED, and that Defendant's Motion for Judgment on the Pleadings (DE-24) be DENIED. Specifically, it is RECOMMENDED that Defendant's final decision be vacated and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the foregoing directives.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Wednesday, June 19, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE