IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-378-FL

| | |
|---|---|
| BILLY RAY COVINGTON, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DE 26, 28).[1] Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge William A. Webb entered a memorandum and recommendation ("M&R") (DE 30) wherein it is recommended that the court grant plaintiff's motion, deny defendant's motion, and that defendant's final decision be vacated and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings. Defendant timely filed objections to the M&R. In this posture, the issues raised are ripe for ruling. As set forth below, the court agrees with the recommendation in the M&R that the case must be remanded pursuant to sentence four of 42 U.S.C. § 405(g), for the reasons stated herein.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin, Acting Commissioner of Social Security, has been named as defendant in this case in place of former Commissioner Michael J. Astrue.

**BACKGROUND**

On March 29, 2007, plaintiff filed an application for disability insurance benefits and supplemental security income, alleging a disability onset date of February 28, 2002. A hearing was held before an Administrative Law Judge ("ALJ"), who determined that plaintiff was not disabled in a decision dated April 30, 2010. The Social Security Administration's Office of Disability Adjudication and Review denied plaintiff's request for review on April 26, 2012. Plaintiff filed his complaint in this court on June 27, 2012, seeking review of the final administrative decision.

**DISCUSSION**

I.     Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed

2

findings or recommendations to which objection is made." Id. § 636(b)(1)(C). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 28, 2002. The ALJ then found at step two that plaintiff had the following severe impairments: (1) history of drug and alcohol abuse, (2) mild mental retardation, (3) arthritis, and (4) low back pain. However, at step three the ALJ further determined that these impairments were not sufficiently severe to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Prior to proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") and found that plaintiff had the ability to perform unskilled medium work. The ALJ further

3

found that plaintiff had no past relevant work. However, at step five, the ALJ concluded that jobs exist in significant numbers in the national economy that plaintiff could perform. The ALJ therefore concluded that plaintiff had not been under a disability, as defined in the Social Security Act, at any time from February 28, 2002, through the date of the ALJ decision, April 30, 2010.

II.     Analysis

Plaintiff argues that the ALJ failed to correctly consider application of Listing 12.05C. See Pl's Mot. J. Pleadings 6-7. The magistrate judge determined that this error requires remand for further consideration of Listing 12.05C and the validity of IQ testing plaintiff has undergone. M&R 5-8. Defendant raises several objections to the magistrate judge's analysis. Obj. 1-7. For the reasons stated below, the court agrees with the determination by the magistrate judge that sentence four remand is required and overrules defendant's objections. The court, however, determines upon de novo review that remand is required for reasons somewhat different than those stated by the magistrate judge.

> Listing 12.05 provides in relevant part:
>
> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . . C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . . .

20 C.F.R. Pt. 404, Subpt. P. App. 1 (Listing of Impairments 12.05). The Fourth Circuit has described the elements for meeting requirement C of this listing as follows:

4

Listing 12.05 requires a showing of "deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22" ("Prong 1"). Listing 12.05 also requires the satisfaction of one of four additional requirements identified as Requirements A–D. At issue in this case was Requirement C, which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70" ("Prong 2"), as well as "a physical or other mental impairment imposing an additional and significant work-related limitation of function" ("Prong 3").

Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012).

In this case, plaintiff brought forth evidence relevant to each of the prongs of Listing 12.05. With respect to prong one, plaintiff introduced evidence of deficits in academic skills and adaptive functioning. Tr. 164-166, 208-212, 306. With respect to prong two, plaintiff produced evidence of IQ scores within the required range. Tr. 207-210, 270-272, 289, 306-308. Finally, prong three is satisfied because the ALJ determined that plaintiff has other severe impairments. Tr. 25.

In rejecting application of Listing 12.05, the ALJ made the following findings:

In terms of the claimant's alleged mental impairment of mild mental retardation, the undersigned finds that allegation slightly credible. The claimant has not generally received the type of medical treatment one would expect for a person disabled by mild mental retardation. The claimant has not sought any treatment from mental health professionals as demonstrated by the record reflecting no actual treatment since the alleged onset date. There is no evidence of the use of any prescribed medicine designed to treat psychiatric or mental symptoms. Although the claimant achieved IQ scores that would result him meeting the listing for mental retardation, the claimant's responses during those psychological evaluations resulted in an invalid profile, raising the possibility that the claimant was not putting forth maximal effort or was not fully cooperating. Therefore, the undersigned finds that the claimant is not disabled due to mental impairments . . . .

. . . Dr. Burgess provided a diagnosis of mild mental retardation but opined that the scores were invalid due to lack of effort on part of the claimant (Exhibit 7F) . . .

(Tr. 27). The ALJ thus suggested that Listing 12.05 did not apply because plaintiff's IQ scores were invalid. See id.

5

In this Circuit, "an ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." Hancock, 667 F.3d at 474. Moreover, an ALJ is permitted "to weigh conflicting IQ test results," id., and to make a disability determination on the basis of "one of two conflicting pieces of evidence." Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987). Nevertheless, "[w]hile the Secretary is empowered . . . to resolve evidentiary conflicts, the Secretary, through the ALJ, is required to explicitly indicate 'the weight given to all relevant evidence.'" Murphy, 810 F.2d at 437 (quoting Gordon v. Schweiker, 725 F.2d 231 (4th Cir.1984)). In particular, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8P, 1996 WL 374184 *7 (July 2, 1996). "[R]emand is appropriate where an ALJ fails to discuss relevant evidence that weighs against his decision." Ivey v. Barnhart, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005) (citing Murphy, 810 F.2d at 438).

In this case, as noted above, multiple IQ test results are in the record, several of which fall below 70. In particular, Dr. Schumann prepared a test report in 1993, when plaintiff was 15 years old, concluding that plaintiff's "current intellectual functioning is in the Mentally Deficient range, with a Verbal I.Q. Score of 64, a Performance I.Q. Score of 70, and a Full Scale I.Q. Score of 64." (Tr. 208). Dr. Burgess and Ms. Kauff-Hill prepared a report in 2007 stating that plaintiff's performance on I.Q. testing "indicates that he is currently functioning within the extremely low range of intelligence, overall (FSIQ = 48) . . . (VIQ = 52, PIQ = 53)." (Tr. 271). Ms. Graham and Ms. Gillyard determined based on testing in 2008 that plaintiff had a full scale IQ of 52. (Tr. 306-07).

6

The ALJ concluded that Dr. Burgess' IQ test scores were invalid because Dr. Burgess "opined that the scores were invalid due to lack of effort on the part of the claimant." (Tr. 27). The ALJ failed, however, to discuss the remaining test results in his decision, much less explain why these test results were not credited. (See Tr. 27-28). Most notable is the ALJ's failure to mention the findings of Dr. Schumann, where those findings directly pertain to plaintiff's mental functioning prior to age 22, and the findings of Ms. Graham and Ms. Gillyard, which include no reservations regarding the validity of the test results. (See Tr. 207-210, 306-308). Remand, thus, is appropriate for further consideration and explanation of the weight given to this evidence that conflicts with the ALJ's decision.

Defendant suggests that the failure to discuss Dr. Schumann's report was harmless error because Dr. Schumann "deemed the scores invalid." (Obj. 3). It is far from clear, however, that Dr. Schumann reached such a conclusion. Rather, in the section of the report discussing the IQ test results, Dr. Schumann opines that the results of the IQ tests "indicate that [plaintiff's] current intellectual functioning is in the Mentally Deficient range," and that "[t]he chances that the [specified] range of scores reflects true intellectual ability are approximately 90 out of 100." (Tr. 208). A separate section of the report discusses a visual motor assessment and an adaptive behavior assessment. (Tr. 209). Then, in the section of the report titled "Summary and Recommendations," Dr. Schumann remarks:

> [Plaintiff] was referred for re-evaluation according to the North Carolina Department of Public Instruction guidelines. Current identification is educable mentally handicapped with special education provided in the resource setting.
>
> Assessment places his cognitive development in the mentally deficient range with no indication of a visual-motor delay. His adaptive behavior skills fall at the adequate level. His reading level is fourth grade with math and written language at sixth and third grade.

7

> While the Full Scale I.Q. score falls within the mentally deficient range, both adaptive and behavior scores and individual achievement test scores are above this range. [Plaintiff] is obviously a child who would benefit from assistance in the academic environment but identifying him as mentally handicapped may be inappropriate.
>
> It is recommended that the School Based Committee determine the need for identification as an exceptional child. The Committee should recommend strategies for meeting his needs in the regular education environment.

(Tr. 209). Invalidity of the IQ test scores is not mentioned in this narrative. While this discussion conceivably could be interpreted as suggesting an evaluation at odds with the IQ test results, it also could be interpreted instead as including comments on the appropriate treatment for plaintiff in the academic environment. Given the ambiguity as to whether Dr. Schumann is in fact questioning the validity of her own IQ test results, and the need for factual findings regarding the import of Dr. Schumann's IQ test results, it is not the role of the court, or the defendant on judicial review of the administrative decision, to substitute its judgment in place of the ALJ. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The matter instead must be remanded to allow the ALJ to make such findings and explain them in its decision in the first place. See Murphy, 810 F.2d at 437.

Defendant also suggests that the ALJ's failure to mention the report by Ms. Graham is harmless error because Ms. Graham is not an acceptable medical source qualified to administer or score IQ tests. (Obj. 5). The ALJ made no factual findings with respect to the credentials of Ms. Graham, however. And it is impossible for the court to determine whether the ALJ rejected Ms. Graham's IQ test results on the basis of her credentials or some other basis such as invalidity of the scores. In addition, the court notes that Ms. Graham's IQ test findings are adopted in a report by Donna Gillyard, MSW, in which she notes "Mr. Covington achieved 52 on a full scale WAIS s given on 4/28/08," referencing the IQ test completed by Ms. Graham. (Tr. 306). Thus, remand is

8

warranted for consideration of the conclusions of Ms. Graham and Ms. Gillyard, and for factual findings regarding the weight given to these reports.

Defendant argues that Dr. VanderPlate's opinion constitutes substantial evidence supporting the ALJ's determination that plaintiff was not disabled under listing 12.05C. (Obj. 4-5). Dr. VanderPlate, a non-examining consulting psychologist, conducted a review of the available evidence in September 2007, and he commented on the report by Dr. Burgess, stating "minimal effort w/ test scores an underestimate of ability. IQ's are not valid." (Tr. 289). While Dr. VanderPlate's opinion discusses Dr. Burgess' report, it fails to address the critical conflicting portions of the record noted above, including Dr. Schumann's report and the report by Ms. Graham and Ms. Gillyard. Indeed, Dr. VanderPlate notes that plaintiff's high school IQ records were not available for his review. (Tr. 289). Therefore, Dr. VanderPlate's opinion serves only as an additional item of evidence that must be weighed by the ALJ on remand, and not a basis for upholding the ALJ decision at this juncture.

In sum, "[w]ithout an analysis of all evidence and a sufficient explanation of the weight given to 'obviously probative exhibits' it is not possible to determine if the ALJ's decision is supported by substantial evidence." Ivey, 393 F. Supp. 2d at 389-90 (citing Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir.1977)). Accordingly, the court remands this matter to discuss application of Listing 12.05C and to explain the reasons for the weight given to evidence in the record pertaining to plaintiff's IQ scores.

## CONCLUSION

Based on the foregoing, the court ADOPTS the recommendation of the magistrate judge, GRANTS plaintiff's motion for judgment on the pleadings (DE 26), DENIES defendant's motion for judgment on the pleadings (DE 28), VACATES the final decision of defendant, and REMANDS

the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this order. The clerk is directed to close this case.

SO ORDERED this the 26th day of July, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge